IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

COLLEGIATE LICENSING
COMPANY,

    Plaintiff,

      v.

AMERICAN CASUALTY CO. OF
READING, PENNSYLVANIA, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:11-CV-3432-TWT

## ORDER

This is a declaratory judgment action arising out of an insurance coverage dispute. It is before the Court on American Casualty Co. of Reading, Pennsylvania and Continental Casualty Co.'s Motion to Transfer [Doc. 15] and Renewed Motion to Transfer [Doc. 38], Allied World National Assurance Company's Motion to Transfer [Doc. 51], Great Divide Insurance Co.'s Motion to Transfer [Doc. 29], American Casualty and Continental Casualty's Motion to Dismiss [Doc. 13] and Renewed Motion to Dismiss [Doc. 37], and Great Divide Insurance Co.'s Motion to Dismiss [Doc. 28]. For the reasons set forth below, the Court DENIES the Defendants' motions.

I. Background

This action arises from several lawsuits filed against the Collegiate Licensing Company ("CLC"), EA Sports, Inc., and others (the "Underlying Actions") [see Doc. 24, Exs. G-O & Q-S] by former collegiate athletes.  Several of the Underlying Actions have been filed in the Northern District of California.  The plaintiffs in the Underlying Actions reside throughout the country and claim that CLC violated their rights of publicity.

Beginning in 2007, National Union Fire Insurance Company ("National Union") issued several commercial general liability and umbrella insurance policies to EA Sports, Inc. [see Doc. 14-1].  Under these policies, CLC is an additional insured.  CLC is also a named insured under several policies issued by American Casualty Co. of Reading, Pennsylvania ("American Casualty"), Continental Casualty Co. ("Continental"), Great Divide Insurance Co. ("Great Divide"), Allied World National Assurance Company ("Allied World"), Westchester Fire Insurance Co. ("Westchester"), and Lexington Insurance Co. ("Lexington").  Allied World, Great Divide, and Westchester delivered their insurance policies to CLC's parent corporation, IMG Worldwide, Inc. ("IMG"), in Ohio [see Doc. 24-3].  The insurance brokers for these policies were based in Atlanta, Georgia.  American Casualty and Continental delivered their policies directly to CLC in Georgia [id.].

Initially, National Union provided a partial defense to CLC in the Underlying Actions.[1]  On October 4, 2011, however, National Union filed a declaratory judgment action in the United States District Court for the Northern District of California seeking a declaration "that it owes no duty to defend or indemnify CLC in connection with the Underlying Actions" (the "California Coverage Action"). (Compl. ¶ 46.)

On October 10, 2011, CLC filed this Complaint against American Casualty, Great Divide, Continental, Allied World, Westchester, and Lexington[2] [Doc. 1].  The Plaintiff seeks a declaration that the Defendants are obligated to defend and indemnify CLC in connection with the Underlying Actions.  The Complaint also seeks damages for breach of contract.  American Casualty and Continental have filed a Motion to Dismiss [Doc. 13] and a Motion to Transfer [Doc. 15] along with a Renewed Motion to Dismiss [Doc. 37] and a Renewed Motion to Transfer [Doc. 38].  Great Divide has also filed a Motion to Dismiss [Doc. 28] and a Motion to Transfer [Doc. 29].  Finally, Allied World has filed a Motion to Transfer [Doc. 51].  The Defendants argue that this action should be dismissed because CLC has failed to join National Union.

---

[1]CLC contends that National Union has not reimbursed CLC for the full cost of its defense in the Underlying Actions.

[2]Lexington has been dismissed without prejudice [see Doc. 83].

Alternatively, the Defendants contend that the case should be transferred to the Northern District of California.

## II. Legal Standards

### A. Motion to Transfer Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Traditionally, federal courts accord a plaintiff's choice of forum considerable deference, only disturbing it when it is clearly outweighed by other considerations. Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996); In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989). The three criteria for the Court to consider in ruling on a motion to transfer are: (1) the convenience of the parties; (2) the convenience of witnesses; and (3) the interests of justice. In weighing those criteria, and deciding whether to transfer an action to another district, the district court is vested with broad discretion. England v. ITT Thompson Industries, Inc., 856 F.2d 1518, 1520 (11th Cir. 1988).

### B. Motion to Dismiss Standard

The Court may dismiss an action under Rule 12(b)(7) where the plaintiff fails to "join a party under Rule 19." FED. R. CIV. P. 12(b)(7). Rule 19 involves a two-part inquiry to determine whether it is proper to dismiss an action if interested parties

cannot be joined. <u>Burger King Corp. v. American Nat'l Bank & Trust Co.</u>, 119 F.R.D. 672, 674 (N.D. Ill. 1988). First the court should determine whether an absent entity is a "necessary" party that must be joined to the action under Rule 19(a). Next, the Court must decide whether the absent party is "indispensable" under Rule 19(b). If the party is indispensable, the "case *must* be dismissed." <u>Burger King</u>, 119 F.R.D. at 675.

### III.   <u>Discussion</u>

### A.   <u>Motions to Dismiss</u>

The Defendants argue that this action should be dismissed under Rule 12(b)(7). Specifically, the Defendants contend that National Union is an indispensable party. "Rule 19 states a two-part test for determining whether a party is indispensable." <u>Challenge Homes, Inc. v. Greater Naples Care Center, Inc.</u>, 669 F.2d 667, 669 (11th Cir. 1982). "First, the court must ascertain under the standards of Rule 19(a) whether the person in question is one who should be joined if feasible. If the person should be joined but cannot be (because, for example, joinder would divest the court of jurisdiction) then the court must inquire whether, applying the factors enumerated in Rule 19(b), the litigation may continue." <u>Id.</u> Under Rule 19(a):

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).[3]  "Whether a particular nonparty is necessary to an action is heavily influenced by the facts and circumstances of each case."  Pinckney v. SLM Financial Corp., 236 F.R.D. 587, 589 (N.D. Ga. 2005).  "However, when making its determination, the Court must consider whether complete relief can be granted with the present parties, and whether the absent party has an interest in the disposition."  Id.

First, the Defendants contend that the Court cannot afford complete relief in the absence of National Union.  Specifically, American Casualty, Great Divide and Continental argue that they have only "excess" coverage obligations.  Thus, their duty to CLC is contingent upon National Union's coverage obligations.  Whether the Defendants are excess insurers, however, depends on the "Other Insurance" provisions in the policies before this Court.  That determination does not rely on any policy

---

[3]Although "the criteria set forth in Rule 19 are not to be applied mechanically," the factors "act[ ] as a guide to enlightened consideration of" substantive interests. Schutten v. Shell Oil Co., 421 F.2d 869, 873 (5th Cir. 1970).

issued by National Union.  Indeed, the Court need not decide the extent of National Union's obligations in order to determine whether the Defendants are obligated to provide excess coverage.  National Union is not a party to the Defendants' policies. National Union's presence is therefore not required for the Court to determine whether those policies provide excess, primary, or no coverage to CLC.  For these reasons, the Court can provide complete relief in the absence of National Union.

Next, the Defendants argue that they may be subject to inconsistent obligations in the absence of National Union.  Specifically, the Defendants stress that the National Union policies include substantially similar language to the Defendants' policies. Despite such similarities, however, there is little danger of inconsistent results.  The National Union policies are separate contracts, issued by a separate entity under separate circumstances.  Further, as discussed below, the National Union policies will likely be governed by a different state's law. Despite similar language, the issues presented in this action and the California Coverage Action are distinct.  Thus, there is little danger of a duplicative or inconsistent result.[4] The Court is sure that the parties

---

[4]The Defendants also argue that since their intervention in the California Coverage Action, both this Court and the California court are tasked with construing the Defendants' policies.  On January 4, 2012, however, the Court granted the Plaintiff's Motion for Permanent Injunction Against the Defendants' Complaints in Intervention [see Doc. 93].  Thus, the California court will no longer address the Defendants' policies.

will apprise it of rulings by the California District Court.  For these reasons, National Union is not a necessary party.

Even if National Union were a necessary party, however, dismissal would not be appropriate.  Rule 19(b) provides that:

> [i]f a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
> (A) protective provisions in the judgment;
> (B) shaping the relief; or
> (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).  Notably, "[i]f a court determines that an absent person satisfies the Rule 19(a) criteria, he must be joined if his joinder is feasible. *Only* if joinder is not possible—i.e., the court lacks personal jurisdiction over him or joining him would destroy the court's subject matter jurisdiction—does Rule 19(b) come into play." Burger King, 119 F.R.D. at 675 (citing 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1607(3d

ed. 2011) (emphasis added).  Here, National Union can be joined under Rule 14.[5]  The

Defendants have failed to do so.  Thus, CLC's action should not be dismissed.

     B.    <u>Motions to Transfer</u>

     American Casualty, Continental, Great Divide, and Allied World have filed

Motions to Transfer the case to the Northern District of California.  28 U.S.C. § 1404

provides that "[f]or the convenience of parties and witnesses, in the interest of justice,

a district court may transfer any civil action to any other district or division where it

might have been brought."  28 U.S.C. § 1404(a).  "The question of whether to transfer

venue is a two-pronged inquiry."  <u>Merswin v. Williams Cos.</u>, 1:08-CV-2177, 2009

WL 249340, at *5 (N.D. Ga. Jan. 30, 2009).  "First, the alternative venue must be one

in which the action could originally have been brought by the plaintiff."  <u>Id.</u>  Here,

_____

     [5]Although there is no diversity between CLC and National Union, this Court
could exercise supplemental jurisdiction over National Union.  <u>See</u> <u>H.L. Peterson Co.
v. S.W. Applewhite</u>, 383 F.2d 430, 433 (5th Cir. 1967) ("[u]nder Rule 14, the court
has ancillary jurisdiction over a third party defendant even absent diversity of
citizenship.").  Indeed, the Defendants do not argue that National Union could not be
joined as a party.  Rather, the Defendants rely on <u>Schutten v. Shell Oil Co.</u>, 421 F.2d
869 (5th Cir. 1970), for the proposition that Rule 19 is subject to pragmatic
considerations.  <u>Schutten</u>, however, "stressed that the criteria set forth in Rule 19 are
not to be applied mechanically nor are they to be used to override compelling
substantive interests."  <u>Id.</u> at 873.  Where an absent party can be joined, however, the
Court need not address the Rule 19(b) factors.  <u>See</u> <u>Burger King</u>, 119 F.R.D. at 75
(noting that Rule 19(b) "indispensability" analysis is necessary only where absent
party cannot be joined).  Indeed, in <u>Schutten</u>, the court noted that the absent party
could not be joined.  <u>Schutten</u>, 421 F.2d at 874.

CLC does not dispute that it could have brought this action in the Northern District of California under diversity jurisdiction.  (See Pl.'s Br. in Opp'n to Defs.' Mot. to Transfer, at 10-11; Doc. 65.)

Second, the Court must balance the private and public factors, including "(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).  "The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996) (quoting Howell v. Tanner, 650 F.2d 610, 616 (5th Cir. 1981)); SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A., 382 F.3d 1097, 1100 (11th Cir. 2004) (there is a "strong presumption against disturbing plaintiffs' initial forum choice.").

"The most important factor under § 1404(a) is the convenience of witnesses, and the moving party must make a specific showing of inconvenience to witnesses."

Electronic Transaction Network v. Katz, 734 F. Supp. 492, 501-502 (N.D. Ga. 1989).

The Defendants have made no such showing.  Indeed, to the extent witnesses will be

required, many of them will be located in Georgia.  The Plaintiff's employees are

located in Georgia.  The insurance brokers who issued CLC's policies are located in

Georgia.  Witnesses from IMG are located in Ohio.  Indeed, none of the witnesses

relevant to CLC's insurance policies are located in California.  Nevertheless, the

Defendants argue that witnesses in the Underlying Actions are located in California.

Only *one* of the plaintiffs in the Underlying Actions, however, is a California resident

[see Doc. 24, Ex. Q].  Although the Underlying Actions are pending in California,

seven of the plaintiffs in the Underlying Actions were deposed in Georgia in

November 2011 [see Doc. 27-2].  Thus, the Defendants have not shown that

California is a more convenient forum for potential witnesses.

Similarly, many relevant documents in this case are located in Georgia.  The

policies issued by American Casualty were delivered in Georgia.  Although the Great

Divide and Allied World policies were delivered to IMG in Ohio, none of the policies

are located in California.  Although the Underlying Actions are occurring in

California, the Defendants have not identified any specific documents that are located

in California.  Further, the Plaintiff is a Georgia corporation.  Its parent, IMG, is an

Ohio corporation.  No Defendant is from California.  Thus, the convenience of the parties weighs against transfer.

The Defendants contend that the locus of operative facts lies in California. Although the Underlying Actions are related to this lawsuit, the facts giving rise to this coverage dispute occurred primarily in Georgia.  Six of the policies issued by Continental and American Casualty were issued in Georgia.  The policies issued by Allied World, Great Divide, and Westchester were issued to IMG in Ohio through Atlanta-based brokers.  Thus, all the insurance policies at issue in this case have substantial connections to Georgia.  None have connections to California.  For this reason, the locus of operative facts lies in Georgia, not California.

Factors five and six are neutral.  There is no indication that service of process will be more difficult in Georgia than California.  Also, all the parties are established companies with substantial means.  Factor seven, however, weighs against transfer. As a court sitting in diversity jurisdiction, this Court must apply Georgia's choice-of-law rules.  See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Georgia follows *lex loci contractus*.  Boardman Petroleum, Inc. v. Federated Mut. Ins. Co., 135 F.3d 750, 752 (11th Cir. 1998).  Under *lex loci contractus*, contracts are governed by the law of the place where they were made.  Id.  Further, "[u]nder Georgia law, an insurance contract is 'made' where it is delivered." Id.  As discussed

above, the American Casualty and Continental policies were delivered in Georgia. The Great Divide, Allied World, and Westchester policies were delivered to IMG in Ohio. None of the policies were delivered in California. Thus, either Georgia or Ohio law will govern interpretation of the policies at issue in this case.

The Defendants, however, argue that California tort law will apply to determine CLC's liability for violations of the right of publicity in the Underlying Actions. Regardless of the law applicable in the Underlying Actions,[6] this Court must apply Georgia and Ohio contract law to this coverage dispute. Thus, the forum's familiarity with the underlying law weighs against transfer to California.

Here, CLC brought this action in Georgia. Typically, there is a "strong presumption against disturbing plaintiffs' initial forum choice." SME Racks, 382 F.3d at 1100. The Defendants, however, contend that CLC's choice of forum is not entitled to deference because the California Coverage Action was filed first. The California Coverage Action, however, involves different parties and different insurance contracts. Although the National Union policies may share similarities with the Defendants' policies, the National Union policies are completely separate contracts

---

[6]The California court has yet to determine the law that will apply to the claims in the Underlying Actions. As discussed above, the plaintiffs in the Underlying Actions reside all over the country. Only one plaintiff resides in California. Thus, several states' laws may apply.

between different parties.  The policies issued by the Defendants were delivered in either Georgia or Ohio.  The National Union policies were issued to EA Sports and cover CLC as an additional insured.  Also, as discussed above, the policies at issue here will be governed by Georgia or Ohio law.  Thus, not only does the California Coverage Action involve different policies between different parties, it will also apply different contract law.  For this reason, the California Coverage Action does not lessen the presumption in favor of the Plaintiff's choice of forum.

The Defendants also allege that CLC has engaged in forum shopping.  The "anticipatory filing exception" may negate the importance of the Plaintiff's choice of forum "where a declaratory judgment action is filed in anticipation of another suit and is being used for forum shopping purposes." Soroka v. Lee Technologies Servs., Inc., No. 06-CV-0710, 2006 WL 1734277, at *4 (N.D. Ga. June 19, 2006).  When National Union instigated the California Coverage Action, CLC filed suit against its direct insurers in Georgia.  CLC is a Georgia corporation headquartered in Georgia.  Many of the contracts at issue were made in Georgia and brokered by Georgia-based insurance agents.  Indeed, the anticipatory filing exception does not apply here at all.  Facing National Union's potential withdrawal of its defense, CLC simply filed a breach of contract action to enforce its rights under insurance policies issued by the Defendants.  The anticipatory filing exception would more aptly apply to a declaratory

judgment action filed by the Defendants in anticipation of CLC's claim for coverage.

For these reasons, CLC's choice of forum is entitled to great weight.  See id.

Finally, the Defendants argue that the efficient administration of justice requires transfer to California.  Specifically, the Defendants contend that the "most compelling reason for transfer is that [the California Coverage Action and the Underlying Actions] are pending in [California]." Martin v. South Carolina Bank, 811 F. Supp. 679, 685 (M.D. Ga. 1992); see also Soroka, 2006 WL 1734277, at *4 ("[T]he fact that a substantially similar action is pending currently in the transferee court counsels in favor of transfer because of the opportunity for consolidation and, thus, the conservation of judicial resources.").  The similarities between the California Coverage Action and this dispute may result in some duplication of efforts. As discussed above, however, the California Coverage Action will not address the same issues being litigated here.  Regardless of the outcome of the California Coverage Action, this Court will interpret the Defendants' policies under Georgia and Ohio law. There is little danger of duplicative or inconsistent results because the Defendants' policies are not being litigated in California.  Reciprocally, the National Union policies are not being litigated here.  Thus, although transfer would prevent some duplication of effort, this consideration cannot overcome the other factors weighing

against transfer.  For these reasons, the case should not be transferred to the Northern

District of California.

C.     Motions to Stay

The Defendants have moved to stay this action pending the resolution of the

Underlying Actions and the California Coverage Action. The Plaintiff opposes a stay

unless the California Coverage Action is also stayed.  (See Pl.'s Br. in Opp'n to Defs.'

Mot. to Transfer, at 22-23; Doc. 65.)  "The final stay determination is discretionary."

Tomco Equip. Co. v. Southeastern Agri-Systems, Inc., 542 F. Supp. 2d 1303, 1307

(N.D. Ga. 2008).   "Courts have the inherent power to control their own dockets,

including the power to stay proceedings."  Id.  "When deciding whether to grant a

stay, courts generally consider the following factors: (1) whether a stay would unduly

prejudice or present a tactical disadvantage to the nonmovant; (2) whether a stay will

simplify the issues in the case; and (3) whether discovery is complete and a trial date

his been set."  Id.  Here, as discussed above, this case presents issues separate from

the California Coverage Action.  A stay will not significantly simplify the issues in

this case.  Thus, there is no reason to grant a stay unless the California Coverage

Action is also stayed.

IV.  Conclusion

For the reasons set forth above, the Court DENIES American Casualty Co. of Reading, Pennsylvania and Continental Casualty Co.'s Motion to Transfer [Doc. 15] and Renewed Motion to Transfer [Doc. 38], Allied World National Assurance Company's Motion to Transfer [Doc. 51], Great Divide Insurance Co.'s Motion to Transfer [Doc. 29], American Casualty and Continental Casualty's Motion to Dismiss [Doc. 13] and Renewed Motion to Dismiss [Doc. 37], and Great Divide Insurance Co.'s Motion to Dismiss [Doc. 28].

SO ORDERED, this 17 day of January, 2012.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge